GREENBERG TRAURIG, LLP
VINCENT H. CHIEFFO (SBN 49069)
ChieffoV@gtlaw.com
HEATHER J. SILVER (SBN 285509)
SilverH@gtlaw.com
1840 Century Park East, Suite 1900
Los Angeles, CA 90067-2121
Telephone:  310-586-7700
Facsimile:  310-586-7800

Attorneys for Defendants Katheryn Elizabeth
Hudson p/k/a Katy Perry; Capitol Records,
LLC; Universal Music Group, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| MICHELE RONK,<br><br>          Plaintiff,<br><br>v.<br><br>KATHERYN ELIZABETH HUDSON p/k/a "KATY PERRY"; BRITTANY HAZZARD p/k/a "STARRAH"; FERRAS ALQAISI; OLIVER GOLDSTEIN p/k/a "OLIGEE"; JOSH ABRAHAM; ROBERT MANDELL p/k/a "G KOOP"; CAPITOL RECORDS, LLC; UNIVERSAL MUSIC GROUP, INC.;<br><br>          Defendants. | Case No.: 2:20-cv-09843-FLA-AS<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT**<br><br>*[Filed concurrently with Declaration of Vincent H. Chieffo; Opposition to Plaintiff's Request for Judicial Notice; Supplemental Request for Judicial Notice]*<br><br>Date:      February 8, 2021<br>Time:      1:30 p.m.<br>Place:     Courtroom 6B<br><br>Judge:          Fernando L. Aenlle-Rocha<br>Action Filed:   October 26, 2020 |

*ACTIVE54729693*

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................ 1

II.   MRS. RONK'S COPYRIGHT CLAIMS CANNOT BE SAVED ................ 3

    A.    Mrs. Ronk Has Demonstrated Neither Substantial Nor Striking Similarity Between *Smile* and *Upgraded 2.0* ...................................... 3

    B.    The Opposition Fails to Save Mrs. Ronk's Imaginative Theory of Access ................................................................................ 6

    C.    Mrs. Ronk Fails to Plausibly Plead Vicarious/Contributory Infringement. ........................................................................ 10

III.  MRS. RONK DOES NOT REFUTE THAT HER UNFAIR COMPETITION CLAIM IS PREEMPTED BY FEDERAL LAW ......................................... 11

IV.   MRS. RONK DOES NOT REFUTE THAT SHE DOES NOT MEET THE STATUTORY REQUIREMENTS TO SUE FOR INFRINGEMENT ........ 11

V.    NO RULE VIOLATIONS JUSTIFY DENIAL OF THE MOTION ........... 14

VI.   CONCLUSION .............................................................. 18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Ardestani v. BMW of N. Am. LLC*,
   No. 8:17-CV-00721-JDE, 2019 WL 2098351 (C.D. Cal. May 13, 2019) ..................17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................................2

*Astor-White v. Strong*,
   817 Fed. App'x 502 (9th Cir. 2020) ................................................................8

*Batts v. Adams*,
   2011 13217923 (C.D. Cal. Feb, 8, 2011) ........................................................7

*Berry v. Baca*,
   No. CV 01-02069 DDP (SHX), 2002 WL 1777412 (C.D. Cal. July 29,
   2002) ............................................................................................................17

*Chico v. Hilton Worldwide, Inc.*,
   No. CV 14-5750-JFW SSX, 2014 WL 5088240 (C.D. Cal. Oct. 7, 2014) ..................17

*D.C. Comics v. Pac. Pictures Corp.*,
   Case No. 2:10-cv-03633-ODW, ECF No. 593 (C.D. Cal. Feb. 21, 2013)
   (Wright, J.) ..............................................................................................17, 18

*Fabbrini v. City of Dunsmuir*,
   544 F. Supp. 2d 1044 (E.D. Cal. 2008) ........................................................10

*Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*,
   139 S. Ct. 881 (2019)................................................................................13, 14

*Gerritsen v. Warner Bros. Entm't Inc.*,
   112 F. Supp. 3d 1011 (C.D. Cal. 2015) ........................................................7

*Gibson Brands, Inc. v. John Hornby Skewes & Co., Ltd.*,
   No. CV 14-00609 DDP (SS), 2015 WL 4651250 (C.D. Cal. Aug. 4,
   2015) ............................................................................................................16

*Guity v. Santos*,
   No. 18-CV-10387 (PKC), 2019 WL 6619217 (S.D.N.Y. Dec. 5, 2019) ..............4, 5, 6

*ACTIVE54729693*

*Hayes v. Minaj*,
    No. 2:12-CV-07972-SVW-SH, 2012 WL 12887393 (C.D. Cal. Dec. 18,
    2012 1209) ...................................................................................................... 8

*Kodadek v. MTV Networks, Inc.*,
    152 F.3d 1209 (9th Cir. 1998) ..................................................................... 11

*Mazer v. Stein*,
    347 U.S. 201 (1954) ........................................................................................ 2

*Mechanix Wear, Inc. v. Performance Fabrics, Inc.*,
    No. 216CV09152ODWSS, 2017 WL 417193 (C.D. Cal. Jan. 31, 2017) ................... 16

*Mitchell v. Metro. Life Ins. Co.*,
    No. CV 05-00810, 2008 WL 1749473 (C.D. Cal. Apr. 7, 2008) ................................ 16

*Nelson v. PRN Productions, Inc.*,
    873 F.2d 1141 (8th Cir. 1989) .................................................................. 5, 6

*O.L. v. City of El Monte*,
    No. 220CV00797RGKJDE, 2020 WL 4186382 (C.D. Cal. May 22,
    2020) ....................................................................................................... 16, 17

*O.L. v. City of El Monte*,
    No. 220CV00797RGKJDE, 2020 WL 4429355 (C.D. Cal. July 31, 2020) ........... 16, 17

*Owaidah v. Mazzei*,
    No. EDCV 18-246-KK, 2020 WL 2405277 (C.D. Cal. Apr. 9, 2020) ........................ 17

*Portillo v. ICON Health & Fitness, Inc.*,
    No. 219CV01428ODWPJWX, 2019 WL 6840759 (C.D. Cal. Dec. 16,
    2019) ............................................................................................................. 18

*Pyatt v. Raymond*,
    No. 10 Civ. 8764(CM), 2011 WL 2078531 (S.D.N.Y. May 19, 2011) ..................... 5

*Schneider v. Cal. Dep't of Corr.*,
    151 F.3d 1194 (9th Cir. 1998) ..................................................................... 10

*Singer v. Live Nation Worldwide, Inc.*,
    No. SACV 11-042 DOC, 2012 WL 123146 (C.D. Cal. Jan. 13, 2012) ..................... 18

*Skidmore v. Led Zeppelin*,
    952 F.3d 1051 (9th Cir. 2020) ................................................................... 3,7

*Telebrands Corp. v. GMC Ware, Inc.*,
    No. CV1503121SJOJCX, 2016 WL 6237914 (C.D. Cal. Apr. 5, 2016)......................15

*Thomas v. Baca*,
    231 F.R.D. 397 (C.D. Cal. 2005) ..................................................................16

*Thongnoppakun v. Am. Express Bank*,
    Case No. 2:11-CV-08063-ODW, 2012 WL 1044076 (C.D. Cal. Mar. 26,
    2012) ............................................................................................................15

*Three Boys Music Corp. v. Bolton*,
    212 F.3d 477 (9th Cir. 2000) ....................................................................7, 8

*Untalan v. Stanley*,
    No. 219CV07599ODWJEMX, 2020 WL 6078474 (C.D. Cal. Oct. 15,
    2020) (Wright, J.)....................................................................................4, 6, 11

*Weiss v. DreamWorks SKG*,
    No. CV1402890DDPAJWX, 2015 WL 12711658 (C.D. Cal. Feb. 9,
    2015) ..............................................................................................................8

**Federal Statutes**

17 U.S.C. § 103(a)(1) .........................................................................................11

17 U.S.C. § 103(a)(2) .........................................................................................11

17 U.S.C. § 408(f)(4) .........................................................................................12

17 U.S.C. § 410(d) .............................................................................................13

17 U.S.C. § 411(a) .............................................................................................13

**State Statutes**

California Business & Professions Code § 17200 ...............................................11

**Rules**

Federal Rules of Appellate Procedure, Rule 27(d)(1)(D)...................................14

Federal Rules of Appellate Procedure, Rule 27(d)(2)(A)...................................14

Federal Rules of Civil Procedure, Rule 12(b)(4)...............................................15

Federal Rules of Civil Procedure, Rule 12(b)(5)...............................................15

*ACTIVE54729693*

Federal Rules of Civil Procedure, Rule 12(b)(6) ................................................ 10

Federal Rules of Civil Procedure, Rule 12(c) .................................................... 18

USDC, Central District of California Local Rules, Rule 11 .............................. 14

USDC, Central District of California Local Rules, Rule 7-3 ................. 16, 17, 18

**Regulations**

37 C.F.R. § 202.16(c)(9) ..................................................................................... 13

**Other Authorities**

Michael Baggs, *'Katy Perry used my song for her hit Never Really Over'*,
    BBC News (June 5, 2019), https://www.bbc.com/news/newsbeat-
    48500456 ......................................................................................................... 9

*How Starrah Went From Working Retail to Writing for Madonna*
    Billboard (June 13, 2019),
    https://www.billboard.com/articles/columns/pop/8515687/starrah-
    billboard-cover-story-2019 .............................................................................. 9

*U.S. Copyright Office, Compendium of U.S. Copyright Office Practices* (3d
    ed. 2019) ......................................................................................................... 13

## I.      INTRODUCTION

Plaintiff Michele Ronk's ("Plaintiff" or "Mrs. Ronk") Opposition to Defendants' Motion to Dismiss, Dkt. 40 ("Opp."), demonstrates a fundamental misunderstanding of the purpose and function of a motion to dismiss, the requirements to state a claim under federal law, and the scope of what copyright law does and does not protect.

Mrs. Ronk repeatedly chastises Defendants Katheryn Elizabeth Hudson, better known by her professional name, Katy Perry (hereinafter, "Ms. Perry"), Capitol Records, LLC ("Capitol") and Universal Music Group, Inc. ("UMG," and collectively with Ms. Perry and Capitol, "Defendants") for not denying or disproving Mrs. Ronk's accusations of infringement. *See, e.g.*, Opp. at 15, 17, 19, 24, 29-30.[1] Putting aside that Defendants expressly state that "no infringement occurred" in the Motion to Dismiss (Dkt. 27 ("Mot.") at 9), Mrs. Ronk misunderstands that on a motion to dismiss, the Court (and Defendants) must accept Mrs. Ronk's well-pled allegations as true. Defendants *cannot even attempt* to "disprove" her claims, Opp. at 30, but must instead demonstrate that Mrs. Ronk has not stated a theory of relief that is plausible on its face, even assuming the truth of her well-pleaded allegations. However, it is *only* well-pleaded allegations that are accepted as true. Mrs. Ronk's insistence that her unsubstantiated conclusions and mere recitation of the elements of her claims are entitled to the same deference is yet another misunderstanding. Defendants and the Court need not accept as true allegations that are contradicted by other material in the Complaint, for example, where Mrs. Ronk alleges that the two lyrics at issue share similar themes, when a cursory reading of the actual posted lyrics shows they do not.

The Federal Rules of Civil Procedure do not grant plaintiffs a free ticket to discovery, and Mrs. Ronk fails to understand that to survive a motion to dismiss, she must state sufficient *facts*, not legal conclusions, to give rise to a claim to relief that is plausible

---

[1] All citations to page numbers in the Motion, Opposition, Reply and related filed materials refer to the page number in the ECF-generated header.

on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Mrs. Ronk's Complaint is not plausible on its face and should therefore be dismissed.

This Court should reject out of hand Mrs. Ronk's untenable assertion of a scope of copyright protection so broad as to amount to a monopoly over all sets of lyrics to songs sharing the common theme of redemption, and certain common words such as "thankful", "road", and "2.0" (and even extending to their synonyms). *See* Compl. ¶¶ 50(3), 50(6), 50(12); Mot. at 21-23. Mrs. Ronk fundamentally misunderstands the purpose of copyright law, which only protects the *particular expression* of ideas comprising the *full work* (here, the entire lyrics), *Mazer v. Stein*, 347 U.S. 201, 207 (1954), rather than isolated, individual words. To extend exclusive copyright protection as far as Mrs. Ronk would like to stretch it would frustrate the entire purpose of the copyright which is to "promote," rather than impede, "the Progress of Science and useful Arts." Art. I, § 8, cl. 8.

Mrs. Ronk's claims must additionally be dismissed because despite admitting the eligibility of her lyrics for copyright registration as early as 2014, she failed to apply for registration until after Defendants' Motion was filed. Mrs. Ronk's unfamiliarity with the registration requirement, and her mistaken assumption that she could not apply for registration until after the Copyright Office approved her preregistration application, do not excuse her from her responsibility to comply with the statute.

Mrs. Ronk devotes much of her Opposition to Defendants' purportedly deficient meet and confer efforts. Mrs. Ronk has been aware of the bases for this Motion as early as August of 2020, yet she made very clear in exchanges leading up to this Motion that she was unwilling to discuss the deficiencies in her Complaint and foreclosed any further communication unless it involved a settlement offer. To the extent the Court finds Defendants' discussions with Mrs. Ronk deficient under the Local Rules, Mrs. Ronk has not identified any resulting prejudice, as she filed her opposition with the clerk on January 8, 2021, more than a week before it was due. For these reasons, the Court should exercise its discretion to hear the Motion on its merits.

2

## II.   MRS. RONK'S COPYRIGHT CLAIMS CANNOT BE SAVED

### A.   Mrs. Ronk Has Demonstrated Neither Substantial Nor Striking Similarity Between *Smile* and *Upgraded 2.0*

Although Mrs. Ronk demands the opportunity to conduct discovery, she does not dispute that substantial similarity can and should be decided as a matter of law where "'the claims are not plausible and … a comparison of [the] two works creates no more than a mere possibility of misconduct.'" Mot. at 20 (citing *Benay v. Warner Bros. Entm't*, 607 F.3d 620, 624 (9th Cir. 2010) *overruled on other grounds by Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) and quoting *Masterson v. The Walt Disney Co., et al.*, 821 Fed. App'x 779, 781 (9th Cir. 2020)). No amount of argument or discovery will change the lyrics to *Smile* or *Upgraded 2.0*, and even an untrained eye can see that the two sets of lyrics are not remotely similar.

Asserting that *Smile* and *Upgraded 2.0* share "a striking quantity" of "similarly expressed ideas" does not make it so and is the very definition of a legal conclusion. Opp. at 10. Review of the lyrics of both works by the Court demonstrates that.

First, only when abstracted to the most generic level do both songs perhaps share common themes of redemption or overcoming obstacles, as do countless other songs; but even Mrs. Ronk agrees such generic themes are not entitled to copyright protection. *See* Mot. at 23-24; Opp. at 14-15, 17. A more textual comparison of the two lyrics demonstrates they are quite different and tell unique stories. Mot. Add. A and B.

Mrs. Ronk's *Upgraded 2.0* is in the genre of Christian Worship Music with a "redemption from a sinful life through Jesus" theme.[2]  In *Upgraded 2.0* Mrs. Ronk tells her autobiographical story of a woman who led a life "deep in sin" driven by her belief that the "only strength is by a man's lust" being redeemed and "upgraded (2.0)" by her

---

[2]  Mrs. Ronk is a self-proclaimed Christian and has even criticized Ms. Perry for supposedly "proudly walk[ing] away from Jesus Christ." Declaration of Vincent H. Chieffo ("Chieffo Decl.") ¶ 7, Ex. 5 at 14.

ACTIVE54729693

belief in the "Shepard," Jesus Christ, and thus avoided her friend Jenn's "sad end," declaring "Jesus, without you, it's me it could of been, Thank You! Amen!"[3]

Ms. Perry's *Smile* is in the genre of Pop Music and not Christian Worship Music. *Smile* makes no mention of the lust of another (or even sin in general) or Jenn, or Jesus, or a Shepard.  Instead it tells the story of a woman working her way through rejection and depression with an "ego check" and "no shortcuts" being "thankful" and "grateful" because she "finally got back that smile," "a Mona Lisa masterpiece." *See* Mot., Add. B.

Mrs. Ronk argues that "there are unlimited creative ways to express that theme [of Redemption]". Opp. at 15. True enough, and these demonstrable differences in the "'plot, themes, …, mood, setting, pace, characters, and sequence of events of the two works,'" show as a matter of law that the two works are indeed *expressing* even the most generic, unprotectable themes in different ways. *See* Mot. at 20-21 (quoting *Kouf v. Walt Disney Pictures & Television*, 16 F,3d 1042, 1045 (9th Cir. 1994)).

Second, Mrs. Ronk neither disputes nor explains why the *Upgraded 2.0* lyrics she pleads in her Complaint at its paragraph 50 sub-paragraph "comparisons" are not the same as those she published to her Facebook page as alleged in the Complaint at the end of paragraph 20—not even bothering to contradict that she altered her lyrics in the Complaint to bolster her claim of similarity. *See* Mot. at 21 n.6, 22; Opp. at 14-17; *Untalan v. Stanley*, No. 219CV07599ODWJEMX, 2020 WL 6078474, at *4 (C.D. Cal. Oct. 15, 2020) (Wright, J.) ("[Plaintiff] offers no opposition to Defendants' . . . argument, and therefore impliedly concedes [it]").

Third, Mrs. Ronk does not respond to, let alone refute, the patent differences in how even the few words common to both *Smile* and *Upgraded 2.0* are used in each work. *See* Mot. at 25-26; Opp. at 14-17; *Untalan*, 2020 WL 6078474, at *4; *see Guity v. Santos*, No. 18-CV-10387 (PKC), 2019 WL 6619217, at *5 (S.D.N.Y. Dec. 5, 2019) ("The shared

---

[3] Compl. ¶ 18 (*Upgraded 2.0* is "based on [Mrs. Ronk's] own life and close friendships" and tells "a heartfelt story … [of] thankfully becoming a new person through the help of Jesus.")

4

usage of single everyday words also fails to show substantial similarity between the two songs . . . . This is especially true when, as here, the single words are employed differently in the two relevant works."); *Pyatt v. Raymond*, No. 10 Civ. 8764(CM), 2011 WL 2078531, at *7 (S.D.N.Y. May 19, 2011) ("[Defendant] finds himself 'Caught Up' in new and entangling feelings; [Plaintiff] urges the woman in her song not to get 'Caught Up' in an abusive relationship.").

There are only *four* identical words in the lyrics of the two works— "2.0", "not", "myself", and "road". If words with common roots were counted, there are only three additional commonalities— "tears/tear", "thank/thankful", and "rejected/rejection". And these words all appear in different locations and contexts in the two works. *See* Mot. at 21-22, 28.[4] Seven isolated words out of a total of 193 words in *Upgraded 2.0*, (*see* Mot., Add. A) is simply insufficient to establish substantial similarity here. *Guity*, 2019 WL 6619217, at *5. Even the seemingly more unique word "2.0" is not protectable, because it is commonly used colloquially in modern speech to describe an updated version. *See Pyatt*, 2011 WL 2078531, at *8 (granting motion to dismiss, and holding that the colloquial phrase "caught up", used as the title of both compared songs and reappearing repeatedly throughout both sets of lyrics, was not subject to copyright protection absent a showing that it was "uniquely or qualitatively important" to the song).

By way of comparison, the lyrics of *Upgraded 2.0* and *Smile* are not as alike as were the lyrics in the matter of *Nelson v. PRN Productions, Inc.*, 873 F.2d 1141 (8th Cir. 1989). Yet, there, the Court of Appeal confirmed the district court had properly granted defendants' motion to dismiss because (as shown on the following chart) the works shared only nine common words used in somewhat similar contexts and were thus not substantially similar as a matter of law:

---

[4] Contrary to Mrs. Ronk's position, the phrases "not knowing myself" in *Upgraded (2.0)* and "not myself" in *Smile do not* convey nor express the same idea in the same way. Mot. at 25. And contrary to Mrs. Ronk's allegations in sub-paragraph 50(7) of the Complaint, the lyrics of *Upgraded (2.0) do not* include the phrase "stayed alive". *Id.*

| Allegedly Infringed Lyric | Allegedly Infringing Lyric |
|---|---|
| "I glanced **up** and **saw** you, a smile so **pretty**." | "I woke **up**, I've never **seen** such a **pretty** girl." |
| "**Makeup** was rolling down my **face**" | "A whole hour just to **make up** your **face**" |
| "What's **cooking in** this **book**, what's cooking in this book" | "U sho 'nuf do be **cooking in** my **book**" |
| "Take a **look**" "Take another **look**" | "U got the **look**" |

873 F.2d at 1143. On their face, the lyrics from *Nelson* share far more in common than those at issue here. *Compare id. with* Compl. ¶¶ 50(1-12) and chart at Mot. at 21-23. That the lyrics from *Nelson* were not substantially similar as a matter of law is strongly persuasive here. *See also Guity*, 2019 WL 6619217, at *5 (granting motion to dismiss, finding no substantial similarity between lyrics where "the only commonalities apparent between the songs' lyrics" were the use of "the phrase 'eres mia' and some individual words, such as 'love,' 'mine,' 'night,' and 'baby'").

Finally, Mrs. Ronk does not dispute that there is nothing unique in the "selection, coordination, and arrangement" of *Upgraded 2*.0's unprotectable elements, including the differing temporal order of the allegedly similar words, that is similar to *Smile* and therefore concedes the point. Mot. at 26-29; *see generally* Opp.; *Untalan*, 2020 WL 6078474, at *4.

**B.     The Opposition Fails to Save Mrs. Ronk's Imaginative Theory of Access**

As an initial matter, by relying on the purported striking similarity between *Upgraded 2.0* and *Smile*, Mrs. Ronk concedes she has not adequately pleaded any alternate theory of access. Opp. at 15, 20. But as explained *supra*, the two works are not substantially—let alone strikingly—similar, and thus Mrs. Ronk cannot depend on striking similarity to circumstantially allege access.

6

Further, Mrs. Ronk does not dispute that, in the absence of striking similarity, she was required to plead "'a reasonable possibility, not merely a bare possibility'" of access to state a claim. Mot. at 6 (quoting *Loomis v. Cornish*, 836 F.3d 991, 995 (9th Cir. 2016)); *see* Opp. at 15-18. Nor does she dispute that this requires plausibly alleging either (1) that *Upgraded 2.0* was "widely disseminated" or (2) a "particular chain of events" linking *Upgraded 2.0* and Defendants' access thereto. Mot. at 14 (quoting *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482 (9th Cir. 2000) *overruled on other grounds by Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020)); *see* Opp. at 20-23. Yet, the Opposition does not claim Mrs. Ronk has pleaded either. *See id.* at 20-23.

First, Mrs. Ronk admits *Upgraded 2.0* was not widely disseminated, confirming the work "has not yet seen it's [*sic*] first publication." *Id.* at 27; *see Batts v. Adams*, No. CV 10-8123-JWF (RZx), 2011 13217923, at *4 (C.D. Cal. Feb. 8, 2011).

Second, Mrs. Ronk does not even pretend she has pleaded a "particular chain of events" linking Defendants to *Upgraded 2.0*. Instead, she attacks the Motion's tone and Facebook's purported history of misusing user data. Opp. at 21-23. Regardless of Mrs. Ronk's disapproval, the Motion's tone does not change what is absent from the Complaint. And even if everything Mrs. Ronk alleges about Facebook's historical treatment of data[5] were true, the general "facts" Mrs. Ronk claims concerning Facebook's "data reciprocity" with *other parties* for *other purposes* simply does not describe a "*particular* chain of events" linking the posting of *Upgraded 2.0* in 2014 and *Defendants'* access thereto. The sole express allegation about Defendants' supposed access is that "[u]pon information and belief," Facebook gave "user data access" to UMG, "and

---

[5] Although it is unclear whether Mrs. Ronk ultimately filed her Request for Judicial Notice ("RJN") with the clerk rather than simply serving it on Defendants, Defendants oppose the RJN with respect to Exhibit C, the Fortune.com article cited by Mrs. Ronk. *See* Opp. at 22 n.4. The article is not judicially noticeable for the truth of its contents. *See* Defendants' Opposition to Plaintiff's RJN; *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1029 (C.D. Cal. 2015) (declining to take judicial notice, for the purpose of plaintiff's opposition, of the contents of newspapers and press releases appearing on third-party websites).

Defendants used that to access Plaintiff Mrs. Ronk's work." Compl. ¶ 42. This is no more than a bare legal conclusion, entitled to no presumption of truth and plainly far less than a "particular chain of events." *See* Mot. at 19 (citing *Hayes v. Minaj*, No. 2:12-CV-07972-SVW-SH, 2012 WL 12887393, at *3 (C.D. Cal. Dec. 18, 2012) ("bald allegation that [defendant] 'took the content'" was a legal conclusion not accepted as true)); Mot. at 16-19. Mrs. Ronk still does not explain how under this supposed "Plan", Defendants specifically came across Mrs. Ronk's lyrics in a post from 2014, out of the billions of posts, photos, and other items shared by Facebook users each day.

Mrs. Ronk also cannot—and does not even try—to distinguish her Complaint from the cases cited in the Motion that rejected equally implausible allegations at the pleading stage. Mot. at 17-18 (collecting cases). For example, Mrs. Ronk does not explain how her allegations are any more plausible than in *Weiss v. DreamWorks SKG*, No. CV1402890DDPAJWX, 2015 WL 12711658 (C.D. Cal. Feb. 9, 2015), where Judge Pregerson concluded the plaintiff's assertion that defendants conspired to steal a flash drive with her work or could have obtained her work through an organization to which both parties had ties, established nothing "more than a 'bare probability'" of access insufficient to state a claim. *Id.* at *5. Nor is Mrs. Ronk's hypothesized access more plausible than in *Astor-White v. Strong*, 817 Fed. App'x 502, 503 (9th Cir. 2020), where the Ninth Circuit confirmed that merely alleging defendants "had a 'working relationship' with or 'moved in similar circles'" as a party with whom plaintiff had shared his work, did not plead a "reasonable opportunity or reasonable possibility" of access.

Finally, Mrs. Ronk leaves it to the Court to make the large inferential leap from her references to out-of-context snippets of third-party articles, supposed "evidence" of a propensity for copying in the past, on the one hand, to Defendants' access to Mrs. Ronk's lyrics in this case, on the other. Even if these articles supported Mrs. Ronk's point (and they do not), establishing a past propensity for copying (let alone infringement) is not a recognized way to prove access. *See Three Boys*, 212 F.3d at 482; *Weiss*, 2015 WL 12711658, at *4 ("Access may not be inferred through mere speculation or conjecture.").

8

Mrs. Ronk argues that Ms. Perry "could have easily claimed there was no access" to popular Norwegian artist Dagny's music, Opp. at 18 & n.1. Mrs. Ronk is not Dagny. The article Mrs. Ronk cites confirms Dagny's song was a top 40 hit in Norway and thus achieved a "high degree of commercial success" and was "widely disseminated", unlike Mrs. Ronk's work, which has not yet seen its first publication. *See* Michael Baggs, *'Katy Perry used my song for her hit Never Really Over'*, BBC NEWS (June 5, 2019), https://www.bbc.com/news/newsbeat-48500456. Far from being conclusive evidence of a "Plan" to "search[] for works of other musicians" like Mrs. Ronk, to base new works on, this article states only that Ms. Perry was inspired by a popular song and that her team reached out first to properly credit its influence. *See id.*; Opp. at 18. Deriving inspiration from other popular songs is common in the music industry and also entirely unsurprising here, since the inspiration was mutual. *See id.* ("Dagny says it's not uncommon for her to listen to a bit of Katy Perry for inspiration before she starts writing or recording" to "'try and get a vibe from that.'"). If anything, the article indicates that it is Mrs. Perry's team's practice to "d[o] it the right way" and be "upfront" with fellow artists when it is interested in sampling their work. *Id.*

Similarly, Mrs. Ronk points to an article recounting a story told by co-defendant Brittany Hazzard, known by her professional name, Starrah, in which Starrah, at *age 11*, wrote down someone else's lyrics she liked in a notebook, to insinuate that Starrah must have done the same to Mrs. Ronk. *See* Opp. at 19; Sam Hockley-Smith, *How Starrah Went From Working Retail to Writing for Madonna*, BILLBOARD (June 13, 2019), https://www.billboard.com/articles/columns/pop/8515687/starrah-billboard-cover-story-2019/ (when another "kid was like, 'You wrote these?' and she was like 'Yeah'"). The very next sentence states that Starrah, *now 30*, recalled that even that innocent act bothered her and "[t]he encounter convinced her that she needed to create her own material, so the next day, she came to school with a song she had written herself." *Id.* Thus, the full story demonstrates that even at a precocious 11, Starrah had a healthy

9

respect for intellectual property. In any event, neither article helps Mrs. Ronk plausibly allege (or has anything to do with) Defendants' access to *Upgraded 2.0*.[6]

### C.   Mrs. Ronk Fails to Plausibly Plead Vicarious/Contributory Infringement.

Mrs. Ronk does not dispute that the failure of her direct copyright infringement claim precludes any claim for vicarious or contributory infringement. Mot. at 29; Opp. at 22-23. Mrs. Ronk further does not dispute that, even assuming direct infringement were adequately alleged, for her vicarious and/or contributory infringement claim to survive, she must plead either (1) actual knowledge by Defendants of specific infringement and that the Defendants induced, caused, or contributed to the infringement, or (2) that Defendants profited from infringement while having, but declining to exercise, a right to stop it. Mot. at 29-30. Rather than defend her bare recitations of the elements as pleaded, (Compl. ¶¶ 61-62), Mrs. Ronk asserts for the first time in her Opposition that "Capitol and UMG, both financially underwrote and have creative control in Ms. Perry's musical career" and that UMG, as the "strategic partner[]" of Facebook "was responsible for and had the right and ability to supervise [the strategic partnership's] use, but failed to do so, resulting in it's [*sic*] alleged misuse for illegal copying." Opp. 18-19. Putting aside that these allegations, even if pleaded, would still not allege the elements of Mrs. Ronk's vicarious and/or contributory infringement claim, "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Fabbrini v. City of Dunsmuir*, 544 F. Supp. 2d 1044, 1050 (E.D. Cal. 2008); *see Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.").

---

[6] Mrs. Ronk also does not respond to or even acknowledge her false accusation that Ms. Perry has a "track record" of infringement because she and her team were "found guilty" of copyright infringement in a lawsuit about the song *Dark Horse. See generally* Opp.; Compl. ¶¶ 43-48. As the Motion explained, no infringement occurred as *Dark Horse* was not substantially similar to the allegedly infringed work as a matter of law. Mot. at 11-12. And Ms. Perry's purported "practically unlimited resources" make her no more likely to infringe someone's work. Opp. at 13.

**III.    MRS. RONK DOES NOT REFUTE THAT HER UNFAIR COMPETITION CLAIM IS PREEMPTED BY FEDERAL LAW**

Mrs. Ronk does not dispute that her unfair competition claim is preempted by federal law and therefore concedes the point. *Untalan*, 2020 WL 6078474, at *4. Mrs. Ronk fails to address the concept of federal preemption of state law, instead believing that if her copyright claim fails, she is entitled to pursue a state unfair competition claim without alleging any additional facts. Opp. at 24-25. The Ninth Circuit squarely rejected this argument, and Mrs. Ronk cites no contrary authority. *See Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1213 (9th Cir. 1998). Where, as here, there is no dispute that the type of work (song lyrics) is copyrightable and thus "within the subject matter" of the Copyright Act, and Mrs. Ronk's "complaint expressly bases [its] unfair competition claim on rights granted by the Copyright Act," her Section 17200 claim is preempted. *Id.* at 1213.

**IV.    MRS. RONK DOES NOT REFUTE THAT SHE DOES NOT MEET THE STATUTORY REQUIREMENTS TO SUE FOR INFRINGEMENT**

Although the Court need not reach the issue and may dismiss the Complaint on its merits for all the reasons previously discussed, (*see* Mot. at 32 n.9 (quoting *Reed Elsevier Inc. v. Muchnick*, 559 U.S. 154, 157 (2010)), none of Mrs. Ronk's excuses in her Opposition change the simple fact that she failed to obtain a copyright registration before filing suit. It was Mrs. Ronk's mistaken belief that she needed to obtain a preregistration "so that she would be able to file suit." Opp. at 25. Her unsubstantiated and irrelevant protests of delay at the Copyright Office in processing her *pre*registration application never prevented her from concurrently filing for conventional copyright registration of her lyrics, as a literary work, or her song, as a musical composition, upon discovering the alleged infringement. 17 U.S.C. §§ 103(a)(1) and (a)(2). Mrs. Ronk confirms that she only recently filed for registration, and therefore she has not complied with the statutory requirements of the Copyright Act to file suit. Opp. at 28-29. Accordingly, even if the

11

Court believed Mrs. Ronk were capable of stating a claim for copyright infringement (she is not), the Complaint must still be dismissed.

Mrs. Ronk misunderstands the effect of her Preregistration, which is not a substitute for proper registration. Mrs. Ronk mistakenly believed that she was supposed to rely exclusively on her Preregistration because *Upgraded 2.0* was unfinished. Opp. at 25. She cites no authority that prevented her from filing for conventional registration of an unpublished copyright for her uncompleted sound recording of her lyrics (the subject of her *pre*registration) and, after completing that work, applying for a second registration of the completed work as a derivative work based on the previously registered work. She also had the unfettered opportunity to register a copyright in only her lyrics as an unpublished literary work.

In any event, Section 408(f)(4) of the Copyright Act makes plain that that if "infringement commenced *no later than* 2 months after the first publication of the work," the claim "*shall* be dismissed" if the work is not registered by "the *earlier* of—[¶] (A) 3 months after the first publication of the work; or [¶] (B) *1 month after the copyright owner has learned of the infringement*." 17 U.S.C. § 408(f)(4) (emphases added). Because *Upgraded 2.0* is still not published, any alleged infringement "commenced no later than 2 months after the first publication of the work". Therefore, Mrs. Ronk needed to apply for conventional registration within "1 month after … learn[ing] of the infringement." *Id.* The Complaint alleges Mrs. Ronk learned of *Smile*'s alleged infringement no later than July 11, 2020, when Ms. Perry posted the lyrics to her Instagram page. *See* Compl. ¶¶ 28, 29. Mrs. Ronk needed to apply for conventional registration by August 11, 2020—one month later. 17 U.S.C. § 408(f)(4). Mrs. Ronk effectively concedes in her Opposition that she has only just recently filed an untimely registration application, well after this August 11, 2020 deadline. Opp. at 28-29.

Mrs. Ronk's argument that the time limitations of Section 408(f)(4) should not apply to her because she did not have a "work preregistered" under the statute until October 6, 2020, after the "three (3) months had already elapsed," Opp. at 28, is

nonsensical. The effective date of her Preregistration is August 6, 2020, the date on which the application and fee were received by the Copyright Office, (*see* ECF No. 28, Ex. A; *U.S. Copyright Office, Compendium of U.S. Copyright Office Practices* § 1609 (3d ed. 2019); 37 C.F.R. § 202.16(c)(9)), and less than one month after learning of the alleged infringement. The effective date for a conventional registration is similarly the day on which the application, deposit, and fee have been received by the Copyright Office. 17 U.S.C. § 410(d). Mrs. Ronk managed to act quickly enough to file for *Pre*registration within a month after learning of the alleged infringement. Opp. at 25. Nothing prevented her from concurrently filing for conventional registration. She simply did not understand the requirement that she do so before filing suit. But Defendants know of no law or authority—and Mrs. Ronk cites none—that would allow her misunderstanding to serve as a substitute for complying with the statute.[7]

Without the benefit of Preregistration, like all plaintiffs, Mrs. Ronk must have a conventional copyright registration *at the time her complaint is filed* to meet the statutory requirements for maintaining suit. *See generally Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 892 (2019) (holding registration prerequisite is met "not when an application for registration is filed, but when the Register has registered a copyright after examining a properly filed application"); 17 U.S.C. § 411(a). While Mrs. Ronk may find the requirement inconvenient, it would not result in any

---

[7] Mrs. Ronk's misunderstanding of the Copyright Act is inexcusable. It is clear from her Opposition, that she was well aware of the Copyright Office website and that she communicated many times with the Copyright Office through its website. Among the many things publicly accessible through that website is the full text of both the Copyright Act and the *U.S. Copyright Office, Compendium of U.S. Copyright Office Practices* (3d ed. 2019). The *Compendium (*accessible *at https://www.copyright.gov/comp3/)* unequivocally explains why filing for preregistration *after* a work has been allegedly infringed (as is the case here) is a useless and unnecessary act. *See, e.g., Id.*, § 1604.2 (Explaining that "[p]reregistration is entirely optional, and for the vast majority of copyright owners, it is not useful" and that even if preregistration is secured "the copyright owner must seek an actual registration for the work shortly after it has been … infringed" in order to satisfy the copyright registration precondition to filing suit set forth in 17 U.S.C. § 411(a)).

13

unconstitutional deprivation of any right to recover for infringement, Opp. at 28, since after obtaining a registration, a plaintiff "can recover for infringement that occurred both before and after registration." *Fourth Estate*, 139 S. Ct. at 886-87. If the Court believes her capable of stating a claim, Mrs. Ronk will have the opportunity to do so—just in another lawsuit after she has obtained a registration.

## V.   NO RULE VIOLATIONS JUSTIFY DENIAL OF THE MOTION

Unable to refute the merits of Defendants' Motion, Mrs. Ronk challenges Defendants' compliance with this Court's local and federal rules. Putting aside that many of the rules cited by Mrs. Ronk do not exist,[8] Mrs. Ronk presents a one-sided account of the months leading up to Defendants' Motion. Defendants' counsel has been forthright with Mrs. Ronk about the serious deficiencies with her allegations beginning in August of 2020, when Mrs. Ronk's former attorney, Melissa Dagodag emailed counsel asserting Mrs. Ronk's copyright infringement claim. Chieffo Decl. ¶ 2. On August 26, 2020, counsel sent Mrs. Dagodag a three-page letter summarizing, with legal citations, the same two fatal defects of Mrs. Ronk's infringement claims set forth in more detail in the Motion. *Id.* ¶ 2, Ex. 1 ("Dagodag Letter"). Mrs. Ronk was therefore aware of the bases for dismissal asserted in the Motion months ago, yet counsel heard nothing further from Mrs. Dagodag or Mrs. Ronk regarding Ronk's baseless infringement claim until on or about November 19, 2020. *Id.* ¶ 4.

Defendants emailed Mrs. Ronk on November 24, December 3, and December 11, to inform her of the insufficiency of her service of the Complaint and Summons on the various defendants, offering multiple times to waive service on behalf of seven of the eight named Defendants, attaching copies of the applicable rules in an effort to ensure that

---

[8] Contrary to Mrs. Ronk's claims, Defendants' Motion fully complies with the formatting requirements of Local Rule 11. Mrs. Ronk cites "Fed. R. Civ. P. Rule 12(d)(1)(D)" and "Fed. R. Civ. P. Rule 12(d)(2)(A)" as imposing additional margin and word limit requirements. Opp. at 7. These provisions do not exist in the Federal Rules of Civil Procedure. Mrs. Ronk appears to have mistakenly cited the Federal Rules of Appellate Procedure, which are inapplicable here. *See* Fed. R. App. P. 27(d)(1)(D) and (d)(2)(A).

Mrs. Ronk would understand the proposal. *See* Chieffo Decl. ¶ 5, Exs. 2-4. On each occasion, Mrs. Ronk flatly rejected counsel's efforts to extend her this normal courtesy they would have extended to virtually any represented plaintiff. *See id.* Counsel suggested a phone call to speak with Mrs. Ronk further on the issue on December 11, but Mrs. Ronk expressly declined the invitation, stating that "[t]here is no reason to talk on the phone yet, unless you would like to discuss a settlement." *Id.*, Ex. 4 at 12. Even though Defendants still have concerns about the adequacy of Mrs. Ronk's service (originally served with unsigned Summonses, then served improperly by mail), Defendants ultimately elected not to include in the Motion its bases for dismissal under Fed. R. Civ. P. 12(b)(4) or (5), given the Court's discretion to waive such deficiencies or dismiss without prejudice. *See, e.g.*, *Telebrands Corp. v. GMC Ware, Inc.*, No. CV1503121SJOJCX, 2016 WL 6237914, at *2 (C.D. Cal. Apr. 5, 2016); *Thongnoppakun v. Am. Express Bank*, Case No. 2:11-CV-08063-ODW, 2012 WL 1044076, at *3 (C.D. Cal. Mar. 26, 2012).

Finally, on December 24, 2020, admittedly six days before the Motion was filed, counsel sent Mrs. Ronk an email reiterating the same issues raised in the Dagodag Letter, attaching the Dagodag Letter, and explaining each and every basis on which the Motion would seek dismissal. Chieffo Decl. ¶ 6, Ex. 5 at 15. As Mrs. Ronk herself notes, she replied to the December 24 email "in complete disagreement with all points raised." Opp. at 11.

Mrs. Ronk's response, however, went much further. She accused counsel of "unethical and offensive" conduct. Chieffo Decl. ¶ 6, Ex. 5 at 14. She accused Ms. Perry of "proudly walk[ing] away from Jesus Christ". *Id.* And she reiterated that further discussion was unnecessary "unless [counsel would] like to give good news . . .", *i.e.*, only if Defendants "want[ed] this case to go away sooner than going to court" and would "discuss[] settlement." *Id.* Indeed, Mrs. Ronk maintained, despite the deficiencies pointed out in the e-mail (and previously), that "the complaint and it's [sic] allegations . . . as they're written, are accurate, sufficient and will stand." *Id.* Mrs. Ronk's response made clear that whether counsel had written her a day, week, or even a month earlier to request

15

a meet and confer on Defendants' intended Motion, her response would have been the same: an unequivocal "No." *Id.*

While it may be true that defense counsel's final December 24 e-mail was sent only six days before the Motion was filed and thus could be considered a day late under Local Rule 7-3, courts in the district hear motions on their merits despite such a deficiency where the Plaintiff has not identified any prejudice from the purported noncompliance. *See, e.g., Mechanix Wear, Inc. v. Performance Fabrics, Inc.*, No. 216CV09152ODWSS, 2017 WL 417193, at *8 n.10 (C.D. Cal. Jan. 31, 2017) ("The Court will not invalidate Defendant's motion for failure to adequately meet and confer. . . . While Defendant may not have fully complied with Local Rule 7-3, Plaintiffs have not shown that they were meaningfully prejudiced by Defendant's conduct."); *Gibson Brands, Inc. v. John Hornby Skewes & Co., Ltd.*, No. CV 14-00609 DDP (SS), 2015 WL 4651250, at *2 (C.D. Cal. Aug. 4, 2015) (hearing motion for leave to amend absent prejudice, as "substantial email exchange" could suffice to meet Local Rule 7-3's requirements, even though the email did not thoroughly discuss the issues and counsel "waited until the day before he filed the motion to email opposing counsel"); *Mitchell v. Metro. Life Ins. Co.*, No. CV 05-00810 DDPRNBX, 2008 WL 1749473, at *1 n.1 (C.D. Cal. Apr. 7, 2008) (hearing noncompliant motion because nonmovant "has not been prejudiced because it had sufficient time to respond to the motion"). Mrs. Ronk has not identified any prejudice by the day-late meet-and-confer email, which thoroughly details the issues raised in the Motion. *See generally* Opp. On the contrary, Mrs. Ronk mailed her Opposition to the clerk more than a week before it was due. Chieffo Decl. ¶ 8.

Relatedly, although futility does not excuse a party from compliance with the Local Rules, it is within the Court's discretion to excuse noncompliance where the opposing party has demonstrated that further conference would have been unproductive. *Thomas v. Baca*, 231 F.R.D. 397, 404 (C.D. Cal. 2005) (explaining that failure to meet and confer was not a sufficient reason to deny motion for class certification because informal resolution was not possible, as both parties were at an impasse); *O.L. v. City of El Monte*,

No. 220CV00797RGKJDE, 2020 WL 4186382, at *1 n.1 (C.D. Cal. May 22, 2020), *modified by O.L. v. City of El Monte*, No. 220CV00797RGKJDE, 2020 WL 4429355, (C.D. Cal. July 31, 2020), (declining to deny motion for preliminary injunction after finding that "any further meet and confer efforts would have been futile in this instance"); *Ardestani v. BMW of N. Am. LLC*, No. 8:17-CV-00721-JDE, 2019 WL 2098351, at *5 (C.D. Cal. May 13, 2019) ("[A]lthough it is not the province of the parties to unilaterally dispense with the meet and confer requirements of Local Rule 7-3 based upon a history of non-cooperation, here, it is apparent based on [non-movant's] opposition that a meet and confer would have been futile."); *Chico v. Hilton Worldwide, Inc.*, No. CV 14-5750-JFW SSX, 2014 WL 5088240, at *4 n.3 (C.D. Cal. Oct. 7, 2014) (noting the Court's policy of requiring strict compliance with Local Rule 7-3 but ruling on the merits of Defendants' motion "given that any further meet-and-confer efforts would clearly be futile"); *Berry v. Baca*, No. CV 01-02069 DDP (SHX), 2002 WL 1777412, at *1 n.4 (C.D. Cal. July 29, 2002) (same); *see also Owaidah v. Mazzei*, No. EDCV 18-246-KK, 2020 WL 2405277, at *1(C.D. Cal. Apr. 9, 2020) (considering motion on the merits even where Defendant conferred only one day before the motion was due and "present[ed] no evidence that meet and confer efforts would have been futile or that Plaintiff was unwilling to engage in settlement discussion"). Here, the December 24 email and the history between the parties shows that counsel for Defendants did not intend to abandon their meet and confer obligations. Yet Mrs. Ronk has consistently met Defendants' civility with sharp conduct, foreclosing all attempts at further communication on any topic other than settlement. Chieffo Decl. ¶¶ 5-6, Exs. 4-5.

Finally, the purpose of the meet and confer obligations, as well as the Local Rules in general, is to increase judicial economy and reduce needless motion practice. *D.C. Comics v. Pac. Pictures Corp.*, Case No. 2:10-cv-03633-ODW (RZx), ECF No. 593 (C.D. Cal. Feb. 21, 2013) (Wright, J.) ("The purpose of the Federal Rules' meet-and-confer requirement is to attempt an amicable resolution of disputed matters to abrogate the necessity of needless Court intervention; the requirement is not to be used as a sword to

gain a tactical upper hand.").[9] Defendants remain convinced of the deficiencies in the Complaint; were the Court to dismiss this Motion for failure to substantially comply with Local Rule 7-3, Defendants would be refiling the same Motion under Fed. R. Civ. P. 12(c), resulting in a needless waste of judicial resources.

*Singer v. Live Nation Worldwide, Inc.*, No. SACV 11-042 DOC, 2012 WL 123146 (C.D. Cal. Jan. 13, 2012), cited by Mrs. Ronk, is inapposite. In *Singer*, defendants conferred only three days before filing a more substantial (and therefore prejudicial) motion for summary judgment, and then only by mailed and faxed letter, then failed to provide any further details regarding the dates and substance of purported prior conversations. *Id.* at *2. Here, Defendants have now provided the context of the prior conversations between the parties and offered to confer further regarding amendment to the Complaint. Moreover, it was Mrs. Ronk's own decision to decline counsel's multiple courtesy offers to waive insufficient service that ultimately resulted in motion practice for both parties over the holiday period. *See* Chieffo Decl. ¶ 5, Exs. 2-4; Opp. at 8; *compare Singer*, 2012 WL 123146, at *2. Finally, here, Defendants made no unilateral "assum[ption as to] what [Mrs. Ronk's] response to the contemplated motion would be," as Mrs. Ronk has been adamant that her claims need no amendment. *See* Chieffo Decl. ¶¶ 2, 6-7.

For the above reasons, Defendants request that the Court exercise its discretion to consider the Motion on its merits.

## VI.   CONCLUSION

Mrs. Ronk fails to plausibly allege that the lyrics to *Upgraded 2.0* and *Smile* are substantially similar. The thematic material of the two works is demonstrably different and apparent from the face of the Complaint. The handful of basic, colloquial words common between the two does not establish substantial similarity as a matter of law, let

---

[9] Defendants attach a copy of the judicially noticeable Order in *D.C. Comics* as Exhibit 6 to the Chieffo Declaration. *See* Defendants' Supplemental Request for Judicial Notice; *Portillo v. ICON Health & Fitness, Inc.*, No. 219CV01428ODWPJWX, 2019 WL 6840759, at *2 (C.D. Cal. Dec. 16, 2019) (taking judicial notice of court filing).

alone striking similarity. Mrs. Ronk all but abandons her farfetched theory of access in her Opposition, yet still fails to plausibly allege how Defendants accessed *her* lyrics, posted in 2014, from among the billions of posts on Facebook, given that she has not published them (or finished her song). Mrs. Ronk's claims of secondary liability, even as improperly amended in her Opposition, are still threadbare and conclusory, and cannot survive absent plausible allegations of direct infringement. Mrs. Ronk's unfair competition claim is preempted. Finally, Mrs. Ronk admits she failed to file for copyright registration before filing suit, and she has not complied with the preregistration statute. Defendants therefore ask that the Court exercise its discretion to consider the Motion on its merits and dismiss Mrs. Ronk's claims with prejudice.

Dated:  January 25, 2021                         GREENBERG TRAURIG, LLP


                                        By:  */s/ Vincent H. Chieffo*
                                              Vincent H. Chieffo
                                              Attorneys for Defendants Katheryn Elizabeth
                                              Hudson p/k/a Katy Perry; Capitol Records, LLC;
                                              Universal Music Group, Inc.

*ACTIVE54729693*